IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHARLES SAMUEL HARTZOL, III, #Y37720,

        Plaintiff,

v.

ZACHARY R. HART,

        Defendant.

Case No. 3:25-cv-00241-SPM

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Charles Samuel Hartzol, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

**The First Amended Complaint**

Plaintiff alleges the following: On February 8, 2024, his toilet began leaking. (Doc. 12, p. 1). In the following two weeks, the toilet continued to leak, and the water was flooding his cell. Plaintiff was continually having to clean the water from the floor, and his requests to have the toilet repaired were ignored. On February 23, 2024,

at 1:45 pm, Plaintiff asked Correctional Officer Wilson to "get him" a Crisis Team and informed Wilson that he had swallowed a nail clipper. Wilson ignored his request and did not obtain a member of the Crisis Team or medical attention for Plaintiff. During the next shift, from 3 p.m. – 11 p.m., Plaintiff informed Correctional Officer Quinnton D. Bent "at showers" that he needed to speak to a member of the crisis team and that he had swallowed a nail clipper. Once Plaintiff entered the shower, he declared that he would not leave the shower until he "got a Crisis Team." Bent placed Plaintiff in handcuffs, and Bent, along with Correctional Officers Korando and Kitchen, escorted Plaintiff to the "infirmary bullpen." When RN Morgan Giucoma and Mental Health Professional Ms. Phillips came by the bullpen area, Plaintiff informed them that he had swallowed a nail clipper and was subsequently taken to receive a CAT Scan, which confirmed that he had indeed swallowed the nail clipper. (*Id.*). Plaintiff was escorted to the healthcare unit, and someone Plaintiff did not know, but was presumed to be a doctor, decided that no further action needed to be taken. (*Id.* at p. 2). Correctional officers were instructed to return Plaintiff to his cell. (*Id.*).

Rather than being placed back into his cell, Plaintiff was stripped of his clothes and put on Crisis Watch. (Doc. 12, p. 2). He asked Kitchen why his clothes were not being placed in his property locker for when he "came off watch." Kitchen responded, "Bitch you should've thought about your clothing before asking and acting like a little bitch," and threatened to throw the clothing away. When Plaintiff arrived at the Crisis Watch cell, he tried to pull away the moment Kitchen removed one handcuff. Kitchen grabbed Plaintiff's arm while Korando hit Plaintiff in the forearm with his rod and Zachary Hart sprayed Plaintiff with mace. The officers then left, but later

returned, telling Plaintiff he had to see medical and mental health staff. Plaintiff refused to leave his cell, stating that he did not feel safe. The officers left, and Sergeant Gardner arrived and convinced Plaintiff to come with him to the infirmary/bull pin area. (*Id.*). Plaintiff spoke with mental health staff and a nurse. (*Id.* at p. 3). Plaintiff then spoke with Correctional Officer Robert about the events that day. (*Id.*).

During the exchange with Robert, Bent watched and laughed. (Doc. 12, p. 3). Robert then sprayed Plaintiff with a large amount of mace to his face and nose. After the spray of mace, several correctional officers began to physically assault Plaintiff. Plaintiff received physical harm including smacks, punching, hair pulling, and kicks to the testicles. During the assault, Plaintiff heard familiar voices, including correctional officers Bent, Kitchen, Korando, and Hart.[1] The officers were using racial slurs and making deregulatory and threatening comments. Hart then smacked the back of the Plaintiff's neck and continued with the verbal abuse. Robert instructed the other officers to lay Plaintiff on the floor to be uncuffed, kicked, and punched. Bent, Kitchen, and Korando then spread Plaintiff's legs apart and began to kick him in the buttocks, penis, and testicles. Following the kicks were more verbal abuses by Wilson. (*Id*).

Plaintiff was sprayed with mace again and taken to the employee bathroom, where his head was pushed into the toilet and flushed. (Doc. 12, p. 4). Plaintiff was next taken to the bullpen and thrown against the wall and sprayed with more mace.

---

[1] During the events of February 23, 2024, Plaintiff identifies a correctional officer by the name "Heat" and later by the name "Heart." (Doc. 12, p. 3). Construing the First Amended Complaint liberally, the Court will treat this individual, Heat/Heart, as Defendant Zachary Hart.

Following the final spray of mace, Plaintiff was taken to the eyewash station and then placed back into his cell, where he was left for seven days with no water or toilet. (*Id*).

## Preliminary Dismissals

In the First Amended Complaint, Plaintiff makes allegations against medical and mental health staff and various correctional officers, including Bent, Kitchen, Korando, Wilson, and Robert. The only defendant listed in the case caption, however, is Zachary R. Hart. The Court will not consider parties who are not listed in the caption as defendants, and therefore any claims against them are dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

## Discussion

Based on the allegations of the First Amended Complaint, the Court finds it convenient to designate the following counts:

**Count 1:**  Eighth Amendment claim against Correctional Officer Hart for use of excessive force on February 23, 2024.

**Count 2:**  Eighth Amendment claim against Correctional Officer Hart for keeping Plaintiff in unconstitutional conditions of confinement for seven days following the use of excessive force on February 23, 2024.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

---

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**Count 1**

Plaintiff states a viable Eighth Amendment claim against Correctional Officer Zachary R. Hart for use of excessive force on February 23, 2024. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (force applied maliciously to cause harm, as opposed to an effort to maintain or restore discipline, constitutes excessive force in violation of the Eighth Amendment). Count 3 will proceed against Hart.

**Count 2**

Plaintiff has failed to plead sufficient facts to support a conditions of confinement claim against Hart. "The Eighth Amendment prohibits the States from subjecting prisoners to conditions of confinement amounting to cruel and unusual punishment." *Giles v. Godinez,* 914 F. 3d 1040, 1051 (7th Cir. 2019). To prevail on an Eighth Amendment claim based on constitutionally inadequate prison conditions, the plaintiff must show that (1) the conditions in the prison were objectively sufficiently serious " – i.e., that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety," *Id.*, and (2) prison officials acted with deliberate indifference to those conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal citations and quotation marks omitted).

Plaintiff claims that after he was physically assaulted by correctional officers on February 23, 2024, he was placed in a cell without running water or a toilet for seven days. (Doc. 12, p. 4). While adequate toilet facilities "are among the minimal civilized measure of life's necessities that must be afforded prisoners," *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012), Plaintiff does not claim that he was

denied access to toilets and not provided water to drink, only that these conveniences were not provided in his cell. Not being provided a functional sink and toilet in his cell, standing alone, does not rise to the level of cruel and unusual punishment. *See Wilkins v. Merkle,* No. 13 C 375, 2015 WL 5544312, at *5 (N.D. Ill. Sept. 15, 2025) ("broken in-cell plumbing, while inconvenient, does not generally rise to the level of a constitutional violation") (collecting cases). Furthermore, there is no indication that Hart was even aware that Plaintiff's cell conditions posed an excessive risk to his health and safety. Accordingly, Count 2 is dismissed without prejudice.

## Motion to Request Summons

Plaintiff has filed a motion requesting "the last thing filed" and any "upcoming documents that maybe filed." (Doc. 11, p. 1). To the extent Plaintiff is seeking copies of documents on the docket or to be filed on the docket in the future, the motion is **DENIED**. Because Plaintiff is currently at a facility that participates in the electronic filing program, when the Court files a document, library staff will print a Notice of Electronic Filing (NEF) and the entire Court document and deliver the documents to Plaintiff through institutional mail. Any document filed by a defendant will be mailed to Plaintiff via the United States Postal service. Library staff will print the corresponding NEF for any document filed by a defendant but will not print the full document. The Clerk of Court will mail additional paper copies of any document in the record only after receiving prepayment of the required fee (i.e., $.50 per page). All requests for copies of documents should be made in writing to the Clerk of Court by referring to the case number and the document number and submitting the required prepayment.

### Disposition

For the reasons stated above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** proceeds against Zachary Hart. **COUNT 2** is **DISMISSED without prejudice**.

Because Plaintiff's claims involve allegations of physical injury, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Hart: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to the defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to

the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendant needs only to respond to the issues stated in this Merit Review Order.**

If judgement is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed in forma pauperis was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 10, 2025**

*s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

## NOTICE TO PLAINTIFF

       The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.